THORNTON (WITHERS v.).   See Case No. 17,918.

## Case No. 14,002.

### In re THORP.

[2 Ware (Dav. 290) 294; [1] 4 N. Y. Leg. Obs. 377.]

District Court, D. Maine.   June 12, 1846.

BANKRUPTCY—FUNDS IN ASSIGNEE'S HANDS—INTEREST—WHEN CHARGEABLE—PROFITS.

1. The principles on which courts of equity charge trustees, assignees, and executors with interest on trust money in their hands, are, that they have either used it in their own business, or improperly neglected to invest it.

2. Where there has been gross neglect, the court will sometimes make annual rests and charge them with compound interest.

3. If the trustee use trust money in trade, it is a breach of trust, and he will be charged with all the profit he has made, but if there has been any loss, that must be borne by himself.

[Cited in Re Newcomb, 32 Fed. 828.]

4. Under the bankrupt law [of 1841 (5 Stat. 440)], assignees are chargeable with interest on all money which they have collected, if not paid into the registry within sixty days after it is received.

In this case, objections were made by True, the only creditor who had proved a debt, to the allowance of some of the charges of the assignee for his personal services; and he also asked, in his petition, that the assignee might be charged with interest on the amount in his hands, from the time that the money was received until it was paid into the registry. The case was submitted, without argument, on the statement of the assignee.

WARE, District Judge. The objections of the creditor to the charges of the assignee, I feel no difficulty in overruling. It appears, from his statement, that he had considerable difficulty in disposing of the property. He obtained an authority, in the first instance, to sell by auction. But having reason to believe that a combination was formed between the bankrupt and his neighbors, to prevent competition at the sale, for the purpose of allowing the property to go back to the bankrupt at a nominal price, he applied to the court and obtained authority to sell at private sale. Under this authority, he sold the property, which was a small piece of land and all the assets of the bankrupt, for 75 dollars, which was believed to be a fair price. The assignee appears to have act-

¹ [Reported by Hon. William Cranch, Chief Judge.]

¹ [Reported by Edward H. Daveis, Esq.]

ed with prudence and good judgment, and for the best interest of the creditors, and his charges are moderate and not at all beyond what are allowed in such cases. He received the money in April, 1844, and deposited it in January, 1846. By the 9th section of the bankrupt law, the assignee is required to pay into the registry all assets received in money, within sixty days after they come into his hands. In this case, the assignee retained it about a year and a half, after the law required him to deposit it in court. For this time, the creditor contends that he ought to pay interest. But the creditors can equitably demand interest only on the sum to be distributed, after deducting the charges of administration. These amount to $42.45, leaving but $32.95 for distribution. The assignee makes no objection to being charged with interest, although he offers as an excuse for not depositing the money, the smallness of the sum and his expectation that more property might come into his hands, and that he delayed paying the money over in order to make, of so small a sum, but a single deposit.

The principles, on which courts of equity charge assignees in bankruptcy, executors, and other trustees with interest on money collected and retained in their hands after it ought to be paid over or invested, are perhaps as well settled as any rules in equity jurisprudence. The general result of all the cases is stated by the master of the rolls, in Rocke v. Hart, 11 Ves. 58, to be that they are charged with interest on two grounds, either that they have made use of the money themselves or neglected to invest it for the benefit of the estate. For a simple neglect to pay over or invest the money, when that is part of their duty, the practice of the court of chancery in England is, to charge them with interest at the rate of four per cent. But if they use the money in their own business, they are charged interest at five per cent. And if they mix the trust-money with their own, as by depositing it to their own credit with a banker, they are presumed to use it in their trade or business. Treves v. Townshend, 1 Brown, Ch. 384; Newton v. Bennet, Id. 361. Where there has been gross negligence, and the money has been kept by the trustee for a long time, the court, in taking the account, will direct annual or semi-annual rests to be made, carrying the interest into the principal and making compound interest. Raphael v. Boehm, 11 Ves. 92; same case, 13 Ves. 407. These rules have been adopted and steadily acted upon by the courts of this country. The general principle on which the court acts is, that the trustee shall not be allowed to make a profit out of the trust property for his own benefit. If he uses the trust-money in his own business or trade, it is a breach of trust, and he is held to account for all the profit he has made by the use of the money, but if, in this misappropriation of the trust fund to his own use, there is a loss, it must be borne by himself. The rule of the court may appear to have something of rigor and severity in it, but it is firmly upheld in practice. All the profit, as far as the trust money can be followed, shall go to the cestui que trust or equitable owner, but all the risk of loss is imposed on the trustee as a penalty for the violation of his duty. 2 Story, Eq. Jur. §§ 1277, 1278; Schieffelin v. Stewart, 1 Johns. Ch. 620; Dunscomb v. Dunscomb's Ex'rs, Id. 508. The object of this strictness is, to secure a faithful administration of the trust by removing from the trustee all temptations to a departure from his duty, as well as to do justice to the cestui que trust.

The rules adopted by the courts of equity on this subject substantially agree with the decisions of the Roman law from which they were perhaps borrowed. By that law, a tutor was allowed six months to invest the money of his pupil or ward, which he received at the time of his appointment; and if not invested in the purchase of land, or loaned within that time, he was charged with interest for simple neglect. Dig. 26, 7, 15. But for money which he afterwards collected in the administration of the trust, he was allowed but two months. Id. 26, 7, 7, § 11. If he applied the money to his own use, he was not charged merely with the customary interest of the place ex more regionis, but was held to pay gravissimas seu legitimas usuras, a higher rate of interest by way of penalty for a breach of trust, as a court of equity will charge a trustee with compound interest under the like circumstances. Id. 26, 7, 7, § 10; Voet. ad Pand. 26, 7, 9. Such a coincidence on a particular subject between two highly cultivated systems of jurisprudence, whether the decisions of one were borrowed from the other, or the courts of both were led to the same conclusions by independent reasoning, serves but to show that the doctrines are founded in natural justice and in a wise policy.

In the present case, I am fully satisfied that the assignee acted with conscientious fidelity in administering on the estate, and made the most that he could out of it for the benefit of the creditors. The amount, with which he is on any principle chargeable, is but a trifle, but the principle involved is important. The law requires the assignee to pay into the registry all money within two months after it is received, giving the same time to pay over money which a Roman tutor was allowed to reinvest money that he had collected. It does not add in default of paying within the time that he shall be charged with interest. But having fixed the time for paying or depositing the money, the law of equity comes in and says that, if not paid at the time, the assignee shall be chargeable with interest, if he has not a reasonable excuse for not complying with the order of the statute. When the sum is small, or the assignee is prevented by the distance

of his residence from the court, or other causes, from depositing money punctually, the rule is not so rigorous but that a reasonable indulgence may be allowed as to the time. In the present case interest will be charged for one year and a half.