ELIZABETH M. COOK, Appellant and Respondent, *v.* ALEXANDER M. LOWRY, Impleaded, etc., Appellant and Respondent.

The provision of the Revised Statutes (1 R. S. 726, § 40), declaring that when in consequence of a valid limitation of an expectant estate in lands there shall be a suspense of the power of alienation or of the ownership, during which the rents and profits shall be undisposed of, and there is no valid direction for their accumulation, such rents and profits shall belong to the person presumably entitled to the next eventual estate, is made applicable to the accumulations of income of personal property by the provision of said Statutes (1 R. S. 773, § 2), declaring that, save as specified, "limitations of future or contingent estates in personal property shall be subject to the rules prescribed * * * in relation to future estates in lands."

The will of L. gave to his executors one-fourth part of his residuary estate, real and personal, to be held in trust during the life of his daughter G., with directions to pay to her the income upon $25,000 thereof, and to invest the residue of the income; upon her death, in case she left issue surviving, he gave the principal and accumulated income to such issue, and in default of issue to his sons. G. married after the death of the testator and is still living; plaintiff is the sole issue of the marriage. In an action for a construction of the will it appeared that a fund had accumulated under this provision, a large portion of which was the income of personal property; *held,* that the direction for accumulation was void (1 R. S. 726, § 37; id. 773, § 2); that the accumulations belonged to plaintiff as "the person presumably entitled to the next eventual estate." *Vail* v. *Vail* (4 Paige, 317), and *Hull* v. *Hull* (24 N. Y. 647), overruled.

The testator died in 1852, the executors accounted in 1865, and defendant was appointed trustee in 1866. There had been a *devastavit* by one of the executors, and the fund paid over to defendant was less than the original principal. *Held,* that it could not be presumed that the *devastavit* was of the principal only, but in the absence of evidence the presumption was that the income was first misappropriated; and that a ruling that plaintiff was entitled to a portion of the fund transferred to defendant, as accumulated income, was error.

Defendant kept no account of the trust fund, but used the securities trans-
ferred to him in his own business, changing them from time to time,
realizing profits therefrom, of which he rendered no account. His account
herein was surcharged with items of expenditure, which were rejected
as unsupported by evidence, and some were shown to be unfounded in
fact. *Held*, that he was properly charged with interest at the legal rate
upon that portion of the fund to the income of which plaintiff was
entitled, with annual rests.

The trust fund when received by defendant consisted mostly of securities
upon which interest fell due at different times during the year. De-
fendant was allowed interest on his disbursements during each year up
to the end of the year, which, with the disbursements, were deducted
from the interest for the year. *Held*, that such allowance was error;
also, that the balance of interest over the disbursements in any year
should draw interest from the end of the year; also *held*, that defendant
was not entitled to commissions.

Commissions are allowed to trustees as a compensation for services in the
execution of the trust, and in case of gross neglect or of unfaithfulness,
the court may properly disallow them.

(Argued January 25, 1884; decided February 26, 1884.)

Appeal from judgment of the General Term of the Supreme
Court, in the fourth judicial department, entered upon an
order made January 9, 1883, which modified and affirmed
as modified a judgment entered upon a decision of the court
at Special Term.

This action was brought to obtain a construction of the will
of Nathaniel A. Lowry, deceased, and for an accounting by de-
fendant, Alexander M. Lowry, as trustee.

By the ninth clause of the will of said Nathaniel M. Lowry the
testator created a trust estate in his executors, of the one-fourth
part of the residue of his real and personal property during
the life of his infant daughter Georgiana, with direction to
invest the income during her life, except that he directed the
income of $25,000 thereof be paid to Georgiana semi-annually
during her life, and on her death leaving issue surviving her, he
gave and devised the said portion with the accumulations to such
issue, and in default of such issue to his sons William H.,
Augustus N. and Alexander M., their heirs, executors and ad-
ministrators, in equal proportions. The testator's daughter

was, at the time of his death, in 1852, of the age of fourteen years. In 1855 she intermarried with one Thomas Cook, and the plaintiff, the sole issue of such marriage, was born March 25, 1857. The mother is still living. In 1865 the executors rendered a final account of their proceedings before the surrogate, which resulted in a decree dated March 23, 1866, adjudging, among other things, that the amount then remaining of the share of the testator's estate under the ninth clause of the will was $48,258.83, which the decree declares "is invested for the benefit of the said Georgiana and her heirs." By an order of the Supreme Court, dated May 22, 1866, the defendant, Alexander M. Lowry, was appointed trustee of the funds and property of the estate in the hands of the executors, amounting in all to $51,567.23, including the said $48,258.83; and the order directed that on the trustee qualifying as therein directed he should be entitled to receive from the executors the said funds and property, and that after paying over the same they should be discharged from further liability. The executors, on the 14th day of December, 1866, transferred to the trustee assets and securities of the nominal value of $51,567.33, of which, by the decree of the surrogate, the sum of $3,428.50 was to be invested to pay annuities given by the will to Therina Hall and Lydia Hall; the remainder, viz., $48,138.83, represented the share referred to in the ninth clause of the will.

Other facts are stated in the opinion.

*Richard P. Marvin* for plaintiff. The direction to accumulate in the ninth clause of the will is invalid. (1 R. S. 773, title 4, chap. 4, part 2; *Kilpatrick* v. *Johnson*, 15 N. Y. 322; *Williams* v. *Williams*, 4 Seld. 538; *Huxtun* v. *Corse*, 2 Barb. Ch. 518.) There being no valid direction to accumulate, and plaintiff being the person presumptively entitled to the next eventual estate, the rents and profits belonged to her. (*Craig* v. *Craig*, 3 Barb. Ch. 508; *Robison* v. *Robison*, 5 Lans. 165; *Shettler* v. *Smith*, 41 N. Y. 341; *Vail* v. *Vail*, 4 Paige, 317; *Manice* v. *Manice*, 43 N. Y.

385; *Gilman* v. *Reddington*, 24 id. 19; 3 R. S., revisor's notes [2d ed.], 578, 579; *Williams* v. *Williams*, 4 Seld. 538; *Grant* v. *Grant*, 3 Redf. 283; *Pray* v. *Hegeman*, 92 N. Y. 508.) The trustee should be charged with the highest rate of interest. Seven per cent is right. (2 Kent's Com. 230, 231; Tiffany & Bullard on Trusts and Trustees, 593; Lewin on Trusts and Trustees, 361; *Raphael* v. *Boehm*, 11 Ves. 92; 13 id. 403; *Barney* v. *Saunders*, 16 How. [U. S.] 535–542, 543.) The trustees should not be allowed commissions. (*Mecham* v. *Steiner*, 9 Paige, 398; 3 Redfield on the Law of Wills, 554; *Moore* v. *Zabriskie*, 3 C. E. Green, 297; *Lamb's Appeal*, 58 Penn. St. 142, note at p. 409; *Hall* v. *Wilson*, 14 Ala. 295.) In this case the court should award damages by way of costs for the delay. (Code, § 3251.)

*William F. Cogswell* for defendant. The direction for accumulation of the fund set apart by the ninth clause of the will beyond the sum of $25,000 was void, because it was not limited to the minority of any person in being at the death of the testator. (1 R. S. 773, §§ 1, 3, 4.) The plaintiff was not entitled to receive the accumulation during the life-time of her mother. (1 R. S. 726, §§ 37, 38, 40, 41; id. 773, §§ 1–3; Humphreys on Real Property, 260; Revisor's notes to the section in question; 3 R. S. [2d ed.] 578; *Vail* v. *Vail*, 4 Paige, 317; *Hull* v. *Hull*, 24 N. Y. 647; *Manice* v. *Manice*, 43 id. 303.) The decree of the surrogate upon the final accounting of the executors is conclusive upon the right of the plaintiff to the accumulations. (*Le Guen* v. *Gouverneur*, 1 Johns. Cas. 436, 492; *Embury* v. *Connor*, 3 Comst. 511, 522; *Blair* v. *Bartlett*, 75 N. Y. 150; *In re Hood*, 90 id. 512.) The plaintiff was not entitled to the accumulations of income until after her arrival at majority. (*Robinson* v. *Robinson*, 5 Lans. 165.) The court erred in charging the defendant with interest at the rate of seven per cent, and compounding the same. (Hill on Trustees [American editor's note 1], 374; *Barney* v. *Saunders*, 16 How. [U. S.] 542; *Attorney-General* v. *Alford*, 4 De G., McN. & G. 843; Perry on Trusts, §§ 470, 471; *King*

v. *Talbott,* 40 N. Y. 95 ; *Adair* v. *Brimmer,* 74 id. 539, 555.)
The General Term properly allowed the defendant his com-
missions. (*King* v. *Talbott,* 40 N. Y. 95.)

Andrews, J. It is determined by the judgment that the
income received, or which ought to have been received by
the trustee, Alexander M. Lowry, on the share set apart
under the ninth clause of the will, and which came to his
hands under the order of May 22, 1866, over and above the
annual income on $25,000 paid by him to the testator's daugh-
ter Georgiana, and all sums expended by him for the support
of the plaintiff, amounted in the aggregate July 1st, 1879, to
$15,766.87, or in other words that this is the amount of the
accumulation upon that share while the defendant has been
trustee. The right to these accumulations is one of the prin-
cipal questions on this appeal. If the will of the testator is to
be observed they are to be retained until the death of the tes-
tator's daughter Georgiana, and then to go as a portion of the
share set apart by the ninth clause of the will to the plaintiff
and other issue of Georgiana, or in case of her death, leav-
ing no issue surviving her, then to his three sons and their
issue.

It is conceded, however, that the direction for accumulation
is void. It is directed to commence from the death of the
testator and is to continue during the life of his daughter for
the benefit of unborn issue. This is in direct contravention
of the statute. (1 R. S. 726, § 37; id. 773, § 2.) If the
accumulation could be considered as directed for the benefit of
the testator's sons, who in one contingency will be entitled to
the estate, the difficulty is encountered that it was not for the
sole benefit of minors, nor was it limited to a minority, and
moreover upon the birth of the plaintiff, the sons were no
longer presumptively entitled either to the principal or the ac-
cumulations. The fund having in fact been accumulated, not-
withstanding the illegal direction, the question arises, to whom
do the accumulations belong. If they were exclusively accu-
mulations of the rents and profits of land, there would be no

difficulty. The devise to the issue of Georgiana living at her death, or in the alternative to the sons of the testator, was a devise of a future contingent estate to the respective devisees, to vest in interest upon the happening of the contingency upon which their respective estates were limited. The plaintiff upon her birth became presumptively entitled to the next eventual estate in the land devised by the ninth clause of the will, and the case, as to the real estate, is brought directly within the 40th section of the article of the Revised Statutes, entitled "Of the Creation and Division of Estates" (1 R. S. 726, § 40), which declares that "when in consequence of a valid limitation of an expectant estate, there shall be a suspense of the power of alienation or of the ownership, during which the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the person presumably entitled to the next eventual estate." Upon the assumption therefore that the accumulation was of the rents and profits of land, it would belong by force of the statute to the plaintiff.

But the accumulation was to a great extent of the income of personal property, and it is claimed that the section above cited has no application, and that in the absence of any statutory rule upon the subject, the rule of the common law applies, and the income so unlawfully directed to be accumulated is to be treated as undisposed of assets, distributable as in case of intestacy. We think it is settled by the great weight of authority that this section is by section two of the title of the Revised Statutes "of accumulations of personal property and of expectant estates, in such property" (1 R. S. 773, § 2), made applicable to accumulations of the income and profits of personal property. That section follows the section prohibiting the suspension of the absolute ownership of personal property for a longer period than two lives in being, and is as follows: "In all other respects limitations of future or contingent interests in personal property shall be subject to the rules prescribed in the first chapter of this act in relation to future estates in land." The authorities upon this question are care-

fully collated and reviewed in the able opinion of Smith, J., at the General Term, and a repetition of them at length is unnecessary. The only cases which appear to conflict with the general current of authority, holding that the same rule applies to both species of property, are *Vail* v. *Vail* (4 Paige, 317), and *Hull* v. *Hull* (24 N. Y. 647). But in neither of these cases is section two of the statute of accumulations of personal property referred to. In *Vail* v. *Vail*, the chancellor held that the will then under consideration created by implication a trust for the accumulation of the income of the testator's personal estate from his death, until the youngest of his six children should arrive at the age of twenty-five years and the death of his widow, for the benefit of the issue of his children, to which issue, the residuary fund was ultimately given. He gave to the six children the income of the fund for life, after the period prescribed for the accumulation. The trust for accumulation being void, the question considered by the chancellor was whether the children were entitled to the income during the period of accumulation, or whether it should be distributed as in case of intestacy. The chancellor decided in favor of the latter alternative on the ground that the testator having given the children only a contingent interest in the income after the death of the widow, he could not have intended to give them an absolute interest in the income before that time. This case was decided upon the supposed intention of the testator as derived from the will, and the rule of the common law. The chancellor refers to the fact that he was compelled to decide the question with little aid from counsel, and so far as appears, his attention was not called to the section in question. Subsequently, in *Haxtun* v. *Corse* (2 Barb. Ch. 506), and *Craig* v. *Craig* (3 id. 76), his attention was called to the section, and he decided that the rule prescribed by the 40th section of the article relating to the creation and division of estates, was applicable to future interests in personal property. In *Hull* v. *Hull*, which was an action for the construction of a will, the General Term decided that a provision for accumulation was void, and that the income unlaw-

fully directed to be accumulated should be distributed as in case of intestacy. This court affirmed the judgment of the General Term upon the latter point without discussion, the main argument being upon another question.

But in *Kilpatrick* v. *Johnson* (15 N. Y. 322) the point was presented with great distinctness. The will in that case contained an unlawful direction for the accumulation of the income of personal property. The court, Denio, Ch. J., writing the opinion, reversed the judgment of the court below, which adjudged distribution of the income so unlawfully directed to be accumulated, as in case of intestacy, on the precise ground that by section two of the statute of accumulation of personal property, the rule prescribed by section forty, in relation to the accumulation of the rents and profits of real estate, was made applicable. This case was cited with approval by Comstock, Ch. J., in *Gilman* v. *Reddington* (24 N. Y. 19), reported in the same volume with *Hull* v. *Hull*, *supra*. The rule of distribution prescribed by section forty, was applied to income from a mixed fund of real and personal property in *Manice* v. *Manice* (43 N. Y. 384), and in the recent cases of *Pray* v. *Hegeman* (92 id. 502) and *Barbour* v. *DeForest*.[*] The argument that sections 3, 4 and 5, in the title relating to the accumulations of personal property, were unnecessary if section 2 applies the rules as to accumulations of the income of real property contained in sections 37, 38 and 39 of the article relating to the creation and division of estates in land, to accumulations of personal property, is based upon a misconception as to the identity of the sections. The time during which the income of real, and the income of personal property is permitted to be accumulated is not the same. In each case it is coextensive with the time during which the absolute ownership of the particular species of property may be suspended. This suspension in the case of real estate may be for two lives in being and a minority in addition; in respect to personal estate for two lives only, without a minority. This rendered it necessary in prescribing the rules governing accumulations of the two species of property to mark the difference, and it was

---

[*] *Ante*, p. 13.

done by making each statute defining the time and purposes of the accumulations complete in itself. (See *Manice* v. *Manice* 43 N. Y. 382.)

We are precluded by the great preponderance of authority in the cases cited from acceding to the appellant's contention on this point, even if as an original question it might admit of doubt. But we think the decision below is supported not only by the direct authorities to which we have referred, but also by the rule of construction declared in several cases, that in interpreting the provisions of the Revised Statutes, the rules governing estates or interests in land should as far as practicable be applied to like estates or interests in personal property. Where there is no reason for a distinction in the nature of the property, there is certainly great propriety in assimilating the rules governing dispositions of real and personal estate. Acting upon this principle, the statutory rule, rendering the interest of a beneficiary in a trust for the receipt of the rents and profits of land inalienable, has by analogy been applied to trusts of personal property. (*Graff* v. *Bonnett*, 31 N. Y. 9.) So also the rule, subjecting the surplus rents and profits of land held in trust, to the claims of creditors. (*Williams* v. *Thorn*, 70 id. 270.) In like manner the provisions in the article regulating powers over real property, have by analogy been applied to powers relating to personal property. (*Cutting* v. *Cutting*, 86 id. 523 ; *Hutton* v. *Benkard*, 92 id. 295.) In the light of these decisions it would be quite too narrow an interpretation of the statute to hold that section forty was not a rule of limitation within section two of the title relating to accumulations of personal property.

We cannot concur with that part of the judgment of the General Term which adjudges that $5,230.40 of the fund transferred to the defendant, Alexander M. Lowry, by the executors under the order of May 22, 1866, upon his appointment as trustee, was accumulated income to which the plaintiff is entitled. The court below reached this conclusion upon the assumption that there had been a *devastavit* by the executors, in respect to the share embraced in the ninth clause of

the will, which as the court found was originally at least $50,000, and upon the further assumption that during the fourteen years between the death of the testator in 1852, and the appointment of the trustee in 1866, the income, from this share, over and above the sum of $24,500 paid therefrom during that time to the testator's daughter Georgiana, would, if properly accumulated, have increased the share much beyond its original amount, whereas the whole amount of securities transferred by the executors to the trustee, as representing the share, was but $48,138.83. The court fixed the amount of $5,230.40, by a course of argument and deduction from the relative accumulation of other shares. It appears that the share of the defendant, Alexander M. Lowry, paid over to him in 1865 was $77,115.77, and his share under the will was the same as the share of Georgiana under the ninth clause. The accumulation on his share was, as the court assumed, $27,115.77. The court applying a rule of proportion, reached the result that the same ratio of accumulation of the daughter's share, after crediting the income applied to her use, would make the accumulation on that share for the nine years between the birth of the plaintiff, and the handing over of the fund to the trustee, $5,230.40, and this sum was directed by the judgment to be paid by the trustee to the plaintiff out of the trust fund in addition to the sum of $15,766.87, the amount of the accumulations since his appointment. The effect of the judgment below in this particular is to reduce the trust fund received by the defendant (the ultimate right to which is still contingent), by the amount of $5,230.40, although the whole fund transferred to the trustee was less than the principal of the share set apart by the will. We do not see how the judgment in this respect can be sustained. Assuming, as the court must have held, that there was a *devastavit* by one of the executors, how does it follow that it was of the principal of the fund and not of the income? The more natural presumption in the absence of evidence would be that the *devastavit* commenced by a misappropriation of the income. The depletion of a trust estate by an unfaithful executor is ordinarily a

gradual process, and commences by the misappropriation of that part which would be least likely to attract attention. In this case, during the whole period of the executorship, all parties seemed to assume the validity of the direction for accumulation, and by the terms of the will no one was entitled to the accumulations until the death of the plaintiff's mother.

The learned counsel for the plaintiff claims that the amount of the accumulations entering into the trust fund is ascertained by finding a sum which put at compound interest for nine years (the time intervening between the birth of the plaintiff and the accounting in 1866), would produce $23,138.83, the residue of the fund transferred to the trustee, after deducting therefrom $25,000 appropriated for the benefit of the mother, and by this process he finds that of the sum of $23,138.83, the sum of $12,607.78 represents accumulations. But this calculation is based upon a purely arbitrary assumption, wholly unsustained by evidence, that at the commencement of the nine years there was remaining of the principal of the share only $35,531.05, and that no defalcation occurred subsequent to that time. In a general sense it may seem equitable to divide the loss assumed to have been sustained by the misconduct of the executor, between the remainderman and the life tenant of the income, but we see no legal ground for reducing the trust fund already depleted below its original amount, to accomplish this purpose. The only allowable inference from the evidence is that the executors did not accumulate the fund according to the direction of the will, and that the fund now in the hands of the trustee represents the remaining principal of the trust estate. This conclusion makes it unnecessary to consider the point urged that the plaintiff is estopped by the decree of the surrogate from denying that the sum of $48,138.83 constituted the principal of the fund in question.

We think there was no legal error in charging the defendant interest on the fund in his hands at the rate of seven per cent per annum, the legal rate of interest, with annual rests. The case presented by the evidence and by the findings exhibits gross dereliction of duty by the trustee. He kept no account of the

trust fund, or of the income. He used the securities in his own business, changing them from time to time and realizing profits therefrom, of which he rendered no account. His account in this proceeding was surcharged with items of expenditure, many of which were rejected as unsupported by evidence, and some of which were shown to be unfounded in fact. Under these circumstances we think it was not error in law to charge the trustee with the legal interest, as the equivalent of undisclosed profits and by way of indemnity for his unfaithfulness in his trust. It is not usual to charge a trustee with the highest rate of interest where he has acted in good faith, without gross negligence, but each case must depend to a considerable degree on its own circumstances. (*Raphael* v. *Boehm*, 11 Ves. Ch. 92; *Barney* v. *Saunders*, 16 How. [U. S.] 535; 2 Kent Com. 230, note and cases cited.)

We think the Special Term properly denied the defendant commissions, and that the reversal of this part of the judgment by the General Term was erroneous. The trust in this case was never executed. The trustee in substance converted the securities to his own use. He kept no proper account and rendered an account in many respects untrue, and subjected the *cestui que trust* to great difficulty and expense in attempting to unravel it. Commissions are allowed to trustees as a compensation for services in the execution of the trust, and in a case of gross neglect or of unfaithfulness, we think the court may properly disallow them. (3 Redf. on Wills, 554 and cases cited.)

In making up the account the courts below, as we understand, adopted the rule that interest upon the productive fund in the hands of the trustee should be computed until the end of each year, and the payments and disbursements during the year with interest thereon be then deducted and the balance be carried into the principal. It is objected that interest on the disbursements should not be allowed, for the reason that presumptively at least the trustee always had on hand income to meet the disbursements. It appears that the trust fund when received by the defendant consisted mainly of govern-

ment bonds, mortgages and other interest-bearing securities, upon which interest fell due at various times during the year. The disbursements for any year were always less than the interest for the same year. This brings the case within the principle stated by WOODRUFF, J., in *King* v. *Talbot* (40 N. Y. 76), "that at no time when trustees make payments for maintenance with income in hand, not bearing interest, should they be allowed interest on such payments." We think therefore, interest on the disbursements should not have been allowed, and also that the balance of income over the disbursements in any year, should draw interest from the end of the year during which it accrued. There are no other questions in the case requiring special consideration.

The judgment below should be modified in accordance with this opinion, and as modified affirmed, without costs to either party.

All concur.

Judgment accordingly.