WESTCHESTER COUNTY.—HON. OWEN T. COFFIN,
SURROGATE.—March, 1885.

VALENTINE *v.* VALENTINE.

*In the matter of the judicial settlement of the account of* SAMUEL H. VALENTINE, *and another, as executors of the will of* SAMUEL M. VALENTINE, *deceased executor of the will of* ABRAHAM VALENTINE, *deceased.*

The courts cannot take judicial notice of the aptitude of bonds and mortgages to escape the vigilance of the taxing officer.

Testator's will authorized the executor, as trustee, to invest funds in bonds and mortgages on real estate in the State of New York, at the best available interest, or in the public stocks of the State of New York, or of the United States. The trustee accordingly purchased, from time to time, at a premium, U. S. bonds of a par value of over $40,000, which being paid off, the premium disappeared and a shrinkage in value occurred, between 1870 and 1885, of more than $6,000. It was contended that the trustee was liable for the loss, by reason of mismanagement, and that, under the will, he could lawfully invest in the stocks named, only on failing to find suitable investments in bonds secured by mortgage on real property.—

*Held,* that the terms of the will did not indicate the preference contended for; and that the trustee was not liable for the decrease in the value of the fund, especially as it appeared that the shrinkage in the principal was more than offset by advantages secured in point of income.

The burden of impeaching the justness of disbursements, made by a trustee for expenses of administration, is upon the party objecting thereto.

ABRAHAM VALENTINE died leaving a will of which Samuel M. Valentine, his son, became sole executor. Among other things, the will devised a life estate in a dwelling house in the city of New York to Jane Valentine, the widow of a deceased son, which the executor was directed, out of certain funds, to keep

in repair, and to pay the taxes and insurance premiums thereon. He also gave to said Jane Valentine an annuity of $2,000, to be secured out of funds ultimately given to her children. In the year 1870, an accounting was had before the then Surrogate of Westchester county, which resulted in the payment, to each of her children, of about $15,000, and the setting apart of a certain amount in securities then deemed sufficient to produce an income that would pay the annuity, and also the taxes, insurance and the cost of repairs to the dwelling house so devised. This fund consisted of $40,000, par value, U. S. bonds, which cost $42,975, and a bond and mortgage of $7,536. The latter was subsequently paid off, and the amount invested in U. S. bonds. As the bonds matured, they were paid off at their face value, the premium paid for them being thus lost. The proceeds were again invested in like bonds commanding a premium, and when paid off by the government, the premium paid was, in like manner lost. During much of the period, the gold, in which the interest was paid, was at a fluctuating premium. The account filed shows the present amount of the fund to be $44,100.

The will authorized the executor to invest the funds of the estate in bonds and mortgages on real estate in the State of New York, at the best available interest, or in the public stocks of the State of New York, or of the United States.

The executor and trustee having died in 1884, Abraham B. Valentine was appointed in his place, and this accounting was had at his instance. Among

other things, it was insisted on his behalf that the executor of the deceased trustee should be compelled to pay $6,411, being the difference between the original amount of the fund and the amount now on hand.    Other questions are indicated in the opinion.

The greater part of the estate was situated in the city of New York, where the deceased executor resided.

WM. G. VALENTINE, and EDWARD WELLS, for trustee.

M. S. THOMPSON, for ex'rs of S. M. Valentine, deceased.

THE SURROGATE. — At the date of the decree in 1870, the executor had in his hands $40,000 of 5-20 U. S. bonds—

| | |
|---|---:|
| Which cost | $42,975 |
| He also had a bond and mortgage for | 7,536 |
| 'Amounting to | $50,511 |

Which sum he was directed to retain and keep invested, and to pay from the income the annuity of $2,000, to Jane Valentine, and the taxes, insurance and repairs on a house devised to her.    The mode of investment at the date of that decree does not appear to have been objected to, and was sanctioned by the court.    Of the above sum of $50,511, there remains now, and is accounted for, only $44,100, being a shrinkage of $6,411.    It is claimed that the executor should restore this amount, it being alleged that he has mismanaged the estate by investing in U. S. bonds, instead of in bonds and mortgages, the shrinkage being caused by investing in such bonds at a pre-

mium, and ultimately receiving their par value only. The executor charges himself with the sum of $39,911, for interest received. If he had steadily received interest at legal rates on the fund invested on bond and mortgage, it would have amounted to about $47,500; from which would be deducted taxes at the rate of two and one quarter per cent., equal to about $14,973, and there would have remained $32,507 of income, instead of $39,911.64; leaving a difference, so far as income is concerned, of $7,404.64, in favor of the mode in which the fund was invested. Thus the executor was enabled to pay the widow her annuity, the taxes, insurance and repairs on her house, and also to pay over, as surplus income, nearly $4,000, to the remaindermen; whereas, if it had been kept invested on bond and mortgage, under the most favorable circumstances, the income would have been insufficient to pay the annuity, taxes, etc., and an encroachment upon the principal would have been necessary, to the extent of the sum of $3,514; thus reducing the principal to about $47,000. If we deduct from this the $4,000 paid to the remaindermen, the fund would have been further reduced to about $43,000. Hence, the amount of the shrinkage is apparently more than compensated by the manner in which the investments were made and managed. It is claimed, however, that we should lay out of consideration the fact that bonds and mortgages were subject to taxation, as that species of property is apt to escape the vigilance of those upon whom the duty of imposing the tax rests. This, I think, we are not at liberty to do. It must be presumed that public

officers will properly perform their duty, and cause all taxable property to pay its just share of the expenses of government.

The will authorized the executor to invest the fund on bond and mortgage on real estate, at the best attainable interest, or in· the public stocks of the State of New York, or of the United States. It is claimed that, because the testator named the investment on bond and mortgage first, he thus indicated that as the course which should have been adopted by the executor, if practicable, and that he could only resort to the other modes, in the order named, on failing to find suitable investments under the first. I think, however, that the duty of the executor was to adopt either, alternatively, which, in the exercise of a sound discretion, he deemed to be best calculated to produce the most favorable results to the beneficiaries. As it seems to me, the deceased executor pursued just that course. Had he invested on bond and mortgage solely, the deduction of taxes would have rendered it necessary to resort to the principal of the fund, for moneys to pay the annuity, and the taxes, insurance and repairs on the house devised to Mrs. Jane Valentine ; whereas the actual result now is that, while the original amount of the fund has been apparently diminished by legitimate causes, yet the charges upon it have been fully met by income, of which there was a surplus of nearly $4,000, which went into the pockets of those ultimately entitled to the fund, after paying the sum of over $6,000, for taxes, insurance and repairs. As far as can be discovered, no result more favorable to the beneficiaries

could have been attained by the adoption of any of the other modes of investment authorized by the will. The account must, therefore, stand, in this respect, as rendered.

I think the credit claimed for $100, paid to counsel, should be allowed. A proper voucher is filed therefor, and no evidence to impeach it has been offered. It is simply an expense of administration, and is to be treated as any similar expense—such as for witnesses' fees, appraisers' fees, travelling expenses, copies of documents, payment of taxes, for insurance, and the like. The burthen of impeaching the justness of such expenditures is upon the contestant. It was so held in the case of Fowler v. Lockwood (3 *Redf.*, 465).

An item of credit for $162.80, for taxes paid, is objected to, on the ground that it was a tax against the individual property of the deceased executor. Of that, however, there is no evidence. The item is stated as the amount paid for taxes on personal property in 1871. As the bond and mortgage of $7,536 was then outstanding, it was, doubtless, the amount of the tax on it, at the rate of a fraction over two and one quarter per cent.

It is also insisted that the deceased executor's estate is chargeable with interest, at the rate of six per cent., on $44,100 from October 1st, 1882, when the bonds in which it was theretofore invested were called in and paid, and the amount deposited in trust companies, which paid three and one half per cent. interest, only. This disposition of the fund, it is urged by contestant, was not an investment of it at all, nor in

compliance with the provisions of the will on the subject. However that may be,—however a trustee may be chargeable with a breach of duty, he cannot be held accountable therefor, unless some injury or loss has resulted therefrom. The amount of the principal has not been diminished thereby, and the income produced has been as great as if it had been invested on bond and mortgage. During the period it was so deposited, the evidence shows that the rate of interest on loans on mortgage was five per cent. If we deduct two per cent. for taxes, there would be an income of three per cent., only, thus showing an advantage of the half of one per cent., in favor of the course adopted.

The executors of the deceased trustee are, according to the tenor of recent decisions, entitled to full commissions.

Costs, to be taxed, are allowed to both parties, out of the fund.