*In re* NEWCOMB.

*(District Court, N. D. New York.* November 14, 1887.)

1. BANKRUPTCY—LIABILITY OF ASSIGNEE—INTEREST ON UNDEPOSITED FUNDS.
   An assignee in bankruptcy, who disregards the express order of the court in depositing funds, is liable for the interest which the designated depositary would have paid.

2. SAME.
   He is liable also, in the absence of all explanation, for legal interest on money collected and not deposited, which remained in his hands through a long period of years.

3. SAME—LIABILITY OF ASSIGNEE—UNCOLLECTED NOTES.
   Under the act of congress of June 22, 1874, § 4, it is the duty of the assignee to sell at public auction notes which belonged to the bankrupt; but where he retains them, and suffers them to become outlawed, he is liable only to the extent that they were collectible.

4. SAME.
   Notes taken by the assignee in renewal of notes held by the bankrupt, to avoid the statute of limitations, or for some other reason equally good, are a charge against him, when outlawed, only so far as they were collectible.

5. SAME.
   An assignee who, without the sanction of the court, sells the effects of the estate on credit, and suffers the notes given for the purchase price to become outlawed, is liable for the loss, whether the makers of the notes were responsible or not.

6. SAME—LIABILITY OF ASSIGNEE—SALE BY ASSIGNEE.
   The assignee sold real estate to the bankrupt's wife, and, without the sanction of the court, took a bond. secured by mortgage, for the purchase price. The interest was allowed to accumulate until the security became inadequate. *Held*, that the assignee was liable for the loss, and that, to avoid the delay of foreclosure, the mortgage should be transferred to the assignee upon payment to the estate of the amount due thereon.

7. SAME—LIABILITY OF ASSIGNEE—LIMITATION OF ACTIONS.
   A new assignee appointed in the place of former assignees, deceased, and who is seeking to enforce against their estates demands which they permitted to outlaw, should not himself be permitted to set up the statute of limitations as a defense to a note given by him to his predecessors for goods purchased of them.

8. SAME—ASSIGNEE'S COMMISSIONS—FORFEITURE BY MISCONDUCT.
   Rev. St. U. S. § 5062, provides that every assignee who shall "fail or neglect to well and faithfully discharge his duties * * * shall forfeit all fees and emoluments," etc. *Held*, in a case where the assignee, a man of high standing to whom no bad faith was imputed, had caused a great loss to the estate by suffering notes, etc., to be outlawed, that the question as to whether or not commissions should be allowed. was for the register in the first instance, and that they would not be disallowed until the assignee had had full opportunity to be heard in explanation.

In Bankruptcy.

Prior to 1872 Alva M. Newcomb was adjudicated a bankrupt and Charles W. Barnes and Ralph Allen were appointed his assignees. In March, 1872, a dividend of 60 per cent. was declared and paid. Though large sums were subsequently collected by the assignees, there has been no dividend since that time. Ralph Allen died in 1881, and Charles W. Barnes died in 1884, both intestate. After the death of Barnes, Frank M. Newcomb was appointed assignee of the bankrupt's estate. In De-

cember, 1885, the representatives of the deceased assignees filed a statement of the transactions of their intestates with the estate of the bankrupt, and prayed that the account might be settled, and the estates of Barnes and Allen discharged. The present assignee and a creditor surcharged and filed objections to this account. It appears by this account that after the dividend was declared in 1872 there was a balance in the hands of the assignees of $1,635.29. Between that time and May, 1880, they collected $6,082.59. During the same period they disbursed $1,665.61. The balance due to the present assignee is stated at $6,052.27. Of this sum $3,163.68 was deposited in the Schuyler County Bank, where it did not draw interest, and in November, 1884, it was turned over to the present assignee. There is now concededly due the estate the sum of $2,788.49. It also appears that there are several notes in the hands of the administrators, given to the bankrupt, which the assignees permitted to outlaw. The account further shows that there are in the hands of the administrators a number of notes taken by the assignees and made payable to them. These notes were also allowed to outlaw. The administrators also hold a bond and mortgage for $3,162.19, dated November 28, 1874, executed by Sarah A. Newcomb to the assignees upon a sale to her of a portion of the bankrupt's real estate. It is alleged that the interest has been allowed to accumulate, until the land is wholly inadequate as security for the amount due.

The present assignee insists that the administrators should pay interest upon the amounts collected by the deceased assignees, and account for the outlawed notes and for the amount lost, by their negligence, upon the Sarah A. Newcomb mortgage. The administrators deny their liability, except to hand over the money, notes, and mortgages in their hands. Upon the issue thus raised, testimony has been taken by the register in charge. This testimony, together with the account and objections thereto, is transmitted to the court, with the request that the rules which should govern the register in taking and stating the account be determined in advance in order to save expense and prevent further delay in closing the estate of the bankrupt.

*Charles S. Baker*, for present assignee and for a creditor.

*O. P. Hurd*, for administrators of former assignees.

COXE, J. As this controversy will undoubtedly have to be decided by the court at some stage of the proceedings, it may tend to simplify and hasten the settlement of the bankrupt's estate if it is determined at the outset, although I am aware of no precedent for this practice.

The questions at issue between the parties are: *First*. Should the administrators pay the present assignee interest upon the money collected by the deceased assignees, and deposited by them in the Schuyler County Bank? *Second*. Should they pay interest upon the money collected by the assignees and not deposited? *Third*. Should they account for the notes given to the bankrupt which the deceased assignees permitted to outlaw? *Fourth*. Should they account for the notes taken by the deceased assignees and which they permitted to outlaw? *Fifth*. Should

they account for the loss upon the Sarah A. Newcomb mortgage? *Sixth*. Should commissions be allowed to the deceased assignees?

Upon the question of interest there can be no doubt. The deceased assignees were the trustees of the creditors. Their duty was clear. They were not permitted to use the trust fund for their own benefit or profit in any way by its possession. The earnings of the fund belonged, not to them, but to the creditors. Although the assignees disregarded the express order of the court in depositing funds in the Schuyler County Bank, yet, as they derived no personal benefit therefrom, it is not easy to see why the creditors will not be indemnified when they receive the interest which the designated depository would have paid. I think they will be. *In re Burt*, 27 Fed. Rep. 548; General Order No. 28; Rule 37 of this court; Bankrupt Act, § 5059; *In re Thorp*, 4 N. Y. Leg. Obs. 377.

As to the balance not deposited, the law presumes, in the absence of all explanation, that the assignees, or one of them, had the use of this sum through a long period of years. The legal interest thereon should be paid by their representatives. *Cook* v. *Lowry*, 95 N. Y. 103; *Schieffelin* v. *Stewart*, 1 Johns. Ch. 620; *Insurance Co.* v. *Lynch*, 11 Paige, 520.

Whether or not the administrators should account for the notes, etc., given the bankrupt, which passed by the assignment, depends upon the question whether they were of any value at the time they came into the hands of the assignees. Strictly speaking it was the duty of the assignees to sell this property at public auction within a reasonable time. Section 5062, (Act June 22, 1874, § 4;) Bump, (9th Ed.) 560. By failing to comply with the provisions of the law, they assumed the responsibility of showing that the estate did not suffer by their action. If these notes were at all times worthless, the creditors have lost nothing by the supineness of the assignees. As I understand the proof, it is undisputed, and the present assignee practically concedes that all, or nearly all, of these debtors to the bankrupt are and always were utterly irresponsible. The Wiedman mortgage is an exception, and there seems to be no reason to doubt that it is collectible. But these are questions of fact, which can best be determined by the register. If he is convinced that the estate has suffered by reason of the failure of the assignees to enforce these demands, to that extent there should be restitution.

The notes and mortgages taken by the assignees stand upon a totally different footing. But, until a preliminary question of fact is determined, the law as applicable to this branch of the case can only be stated in the alternative. The counsel for the present assignee asserts that these notes were given to the deceased assignees for property of the bankrupt sold by them. The counsel for the administrators denies this, and insists that there is no proof to support the assertion. He argues that they may have been given in renewal of notes held by the bankrupt to avoid the statute of limitations, or for some other reason equally good. If these notes represent debts due to the bankrupt, they are covered by the rule already suggested as applicable to that class of indebtedness. If, however, the notes were given in payment of property sold by the as-

signees, there can be no doubt as to their liability. And if, as suggested, the parties to whom they sold were irresponsible at the time, the case against them is greatly strengthened. I am familiar with no section of the bankrupt act which permits an assignee, without the sanction of the court, to sell the bankrupt's property on credit, (section 5062, *supra*;) but, having done so, if he makes no demand of payment, and permits the debt to outlaw, there can, it is thought, be no two opinions regarding his responsibility. To hold that an assignee may with impunity dispose of the property in his hands on credit, and make no effort to collect the debt, is, in effect, saying that he may give away the trust fund, or waste it in any manner that he may see fit. To sell on credit to a worthless party would, ordinarily, render an assignee liable; to sell to a responsible party, and permit the debt to outlaw, would, if possible, be even more reprehensible; but where an assignee does both, every avenue of escape from liability is closed.

One of these notes was given by the present assignee. He must, of course, pay the amount due thereon to the estate.

Much that has been said already applies to the Sarah A. Newcomb mortgage. It does not appear whether the sale of the property to her was made pursuant to an order of the court, or how long the mortgage had to run, or whether any payments have been made thereon. No indorsements appear on the bond, but the administrators assert, in the account, that about $929 has been paid thereon at various times. It seems to be conceded that, with the accumulations of interest amounting to over $1,000, the land is inadequate security. If the sale was made without the order of the court, the action of the assignees was wholly unauthorized; but having taken the mortgage, they should have enforced it while the security was sufficient. Probably the simplest manner of disposing of this question is for the present assignee to assign the mortgage to the administrators upon receiving from them the amount due thereon. The assignee should not be required to foreclose this mortgage. Any further delay will be intolerable. It is manifestly his duty to close up the trust in the speediest possible manner, and there should be no impediments placed in his path. But the manner of arriving at the deficiency due the estate may be safely left to the register.

It is undeniable that, by the negligent action of the deceased assignees in these particulars, the creditors have lost a large sum of money to which they are entitled, and for which the estates of the assignees are liable. The question as to whether or not commissions should be allowed the assignees in the settlement of the estate may properly be passed upon in the first instance by the register. It is possible that some proof may be offered by which the court can fairly take this case out of the clause of section 5062, *supra*, which provides that every assignee who shall "fail or neglect to well and faithfully discharge his duties * * * shall forfeit all fees and emoluments," etc. *Cook* v. *Lowry*, *supra*. This is a most extraordinary case. Nothing at all approximating it has come under my observation. The papers do not disclose when the assignees were appointed; but they do show that for over

10 years the assignees delayed without cause the settlement of the estate, and permitted its securities to depreciate and to outlaw. Almost every section of the bankrupt law, applicable to assignees, has been disregarded or directly violated, and all this without a word of explanation. It is conceded by all that the deceased assignees were men of high standing in the community in which they resided, and no bad faith is or can be imputed to them. Their lips are closed. There may be some explanation of their conduct, and all possible opportunity should be given to explain what upon the papers now submitted seems to be a case of unprecedented and unpardonable neglect. An order disallowing commissions will not be made until a full opportunity has been accorded the representatives of the deceased assignees to be heard upon that issue. The court may feel constrained reluctantly to make the order, but it is hoped that the necessity therefor may be averted. Bearing in mind the rules above referred to, it is thought that the register can have no difficulty in correctly stating the account.