## *In re* WASHBON'S ESTATE.

## *In re* WASHBON *et al.*

### *(Supreme Court, General Term, Fourth Department.   April, 1891.)*

**1** EXECUTORS AND ADMINISTRATORS—ACCOUNTING—INCOME OF LIFE-ESTATE.

Testator devised to his executors a farm, together with the farming utensils and live-stock thereon, and certain other personal property, in trust to receive the income, rents, interests, and profits thereof, and apply the same to the use of testator's son during his life, etc.   *Held,* that the executors were empowered, under the provision of the will, to permit the beneficiary to occupy the farm and use the personal property therein mentioned, without incurring any liability therefor to the parties interested in the remainder.

**2.** SAME—EXPENSES OF CONSTRUING WILL.

Executorial trustees are entitled to and should be allowed in their accounts disbursements for witness and counsel fees made by them in defending a proceeding instituted by a devisee to obtain a construction of a doubtful provision of testator's will.

**3.** SAME—COMMISSIONS ON INCOME OF LIFE-TENANT.

Executorial trustees, directed by the will to receive the rents and profits of real estate, and apply them to the use and benefit of a person for life, who permit the beneficiary to occupy and use the devised premises, are entitled to commissions on the annual income thereof.

**4.** SAME—LIABILITY FOR NEGLIGENCE—DECREE.

Where executorial trustees have not been shown to be guilty of negligence amounting to a willful default in the management of the trust-estate, they cannot be charged with more than actually came to their hands by reason of the trust.

Appeal from surrogate's court, Otsego county.

Judicial settlement of the accounts of Robert Washbon and John Cope, surviving testamentary trustees under the will of Andrew G. Washbon, deceased.

The surviving trustees presented a petition for a judicial settlement of their accounts to the surrogate of Otsego county, who issued a citation returnable October 10, 1889, directed to John G. Washbon, Andrew G. Washbon, Anne W. Lee, and Nathan Bridges, as executor of the last will and testament of Henry R. Washbon, a deceased trustee. On the return of the citation, proceedings were adjourned to November 15, 1889, and they were again adjourned to the 9th of December, 1889. The statements and accounts presented by the trustees were verified in November, 1889. Anne W. Lee and Andrew G. Washbon, for themselves, in behalf of their father, John G. Washbon, filed certain objections to the account. Andrew G. Washbon, of the town of Morris, Otsego county, made and published his last will and testament bearing date the 31st day of January, 1865. Robert Washbon, Henry R. Washbon, and John Cope, Jr., were named as executors in said will. Henry R. Washbon, one of the executors, died on the 1st day of April, 1884. No inventory having been filed, Andrew G. Washbon and Anne W. Lee, on the 23d of November, 1887, filed a petition in the surrogate's court asking for an order that a citation issue directed to Robert Washbon and John Cope, Jr., and Nathan Bridges, as executor of Henry R. Washbon, requiring them to return and file an inventory of the estate of the testator; and in pursuance of the proceedings thus instituted an inventory was, on the 28th day of February, 1888, filed, "and an account of their proceedings as such executors and trustees;" and the surviving executors made application for a voluntary accounting, and proceedings were had thereon in connection with the compulsory proceedings; proofs were taken before the surrogate, and he "adjudged and decreed that the said accounts be, and the same are hereby, finally and judicially settled and allowed as so found, adjudged, and recorded as aforesaid;" and Robert Washbon and John Cope, Jr., were "directed to retain in their hands, as surviving testamentary trustees under the will of said testator, subject to modifications for charges and allowances for interest, and all proper payments and expenses to be adjusted upon a future accounting of said trustees," the sum of $9,017.54, as appears by the decree entered in the surrogate's court on the 26th day of July, 1889. The stipulation was filed and that decree was amended on the 2d day of September, 1889, *nunc pro tunc.* The decrees of the 26th of July, 1889, and the 2d of September, 1889, remain in full force and virtue. Before the decree appealed from was pronounced, John G. Washbon died intestate on the 9th day of March, 1890, and subsequent thereto Andrew G. Washbon was appointed administrator of his estate, and on the 18th of April, 1890, he was substituted as a party in place of the deceased, and the proceedings were continued by a stipulation "as a final judicial accounting."

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Carver, Deyo & Jenkins,* for appellants.　*O. F. Matterson, Nathan Bridges,* and *W. H. Johnson,* for respondents.

HARDIN, P. J. In addition to the usual duties imposed upon the persons named as executors in the will of Andrew G. Washbon, certain duties and liabilities arose by reason of the second provision contained in said will, which was as follows: "*Secondly.* I give and bequeath to my executors, hereinafter named, the farm in the town of Morris, aforesaid, containing about two hundred and fifty (250) acres, more or less, upon which my son, John G. Washbon, now resides, and which is now occupied and worked by Levi Reddington, together with the farming utensils and live-stock thereon, belonging to me at the time of my decease, and also the sum of four thousand ($4,000) dollars; and also the equal one-fourth part of the residue of my estate, as hereinafter mentioned; and also any other's share or interest which may be hereinafter devised or given to them as trustees in trust to receive the income, rents, interests, and profits thereof, and to apply the same to the use of my said son, John G. Washbon, during his life, and at his decease to grant, convey,

transfer, and pay over the same to the descendants of my said son, John G. Washbon, who shall be living at his decease, to whom I devise and bequeath the same, so that the descendants of each deceased child, if any, of my said son, John G. Washbon, shall take, together and *per stirpes*, one such share as said deceased child would have taken if living, and for the benefit of said descendants of said son, John G. Washbon. *Item.* I desire and request my executors and trustees to keep said farm in as good condition, repair, and supply as they may be at the time of my decease." Under this provision of the will, the trustees had the power, and they exercised their discretion, to allow the beneficiary, John G. Washbon, to occupy the farm and the property mentioned in the provision of the will which we have just quoted. That such occupation should take place seems to have been in accord with the intention of the testator. The trustees should not suffer by reason of permitting the beneficiary to enjoy the property mentioned in the provision of the will just quoted. *In re Brewer*, 43 Hun, 597. By the clause of the will, "the farming utensils and live-stock" were given to the trustees "in trust to receive the income, rents, interests, and profits thereof, and to apply the same to the use of" John G. Washbon during his life; and the trustees were authorized to "grant, convey, transfer, and pay over the same to the use of John G. Washbon during his life, and at his decease to the descendants of my said son, John G. Washbon, who shall be living at his decease." As already stated, the trustees were warranted in allowing the beneficiary to have the use of the farm, utensils, and stock; and it seems the same were used by John G. Washbon, and by his family, in his life-time, and the trustees at no time have received any beneficial effect from the same. We think the acquiescence of the beneficiary and of the children of John G. in the use made of the personal property upon the farm was such that no liability by reason thereof should be imposed upon the trustees. *Sherman* v. *Parish*, 53 N. Y. 492, and cases there cited; *Butterfield* v. *Cowing*, 20 N. E. Rep. 369. In the course of the opinion in that case, it was said: "It is quite clear that no *cestui que trust* can allege that to be a breach of trust which has been done under his own sanction, whether by previous consent or subsequent ratification. The general rule is that either concurrence in the act, or acquiescence without original concurrence, will release the trustees." The evidence seems to be sufficient to warrant the finding of the surrogate, as a matter of fact, that all the matters between the trustees and the beneficiary were settled and accounted for down to April 1, 1881, and subsequently as fast as they accrued.

2. Inasmuch as the beneficiary had the use of the stock and utensils on the farm, it was proper to refuse to charge the trustees for the value thereof.

3. Nor were the trustees chargeable with any interest upon the $200, as the value of the testator's interest in the Hill lot. The beneficiary seems to have had the use of it, and the trustees were not shown to be negligent in respect thereto, or to have received any interest thereon for which they should be held to account.

4. In March, 1885, Manda Fairchild, who is mentioned in the ninth provision of the will, instituted proceedings against the trustees to compel them to reimburse her the sum of $405.53, which she alleged had been expended in procuring necessary fuel for her use, and for the construction of the ninth provision of the will favorable to her interests. The proceedings were instituted before the surrogate. A contest was had, and finally resulted in the determination of the rights of the petitioner, and the liabilities and duties of the trustees, and the proceedings were dismissed, "but without prejudice to the rights of said trustees to recover their costs and expenses of such proceeding out of and from the said estate." In the case now before us the surrogate has found "that said trustees were compelled to and did pay for witness' fees and other expenses in and about defending said proceedings, on or about September 11, 1885, the sum of $57.60, and the further sum of $70.00, No-

vember 18, 1885, to B. J. Scofield, Esq., their counsel, for his reasonable charges,—both of which items are included among the expenditures enumerated in the above twenty-fourth finding of facts; that the said expenditures were necessary and proper, and had in relation to said trust fund and estate." We think, upon the evidence found, that the surrogate properly exercised his judgment and discretion in allowing the disbursements so made by the trustees. Code Civil Proc. § 2562; *Valentine* v. *Valentine*, 3 Dem. Sur. 597; *McCabe* v. *Fowler*, 84 N. Y. 320.

5. We think no error was committed by the surrogate in allowing commissions to the trustees. In *Re Selleck*, 1 N. Y. St. Rep. 575, it was said: "It is proper to allow a percentage to executor and trustee when the fund is the same, but is changed by will or by decree of a competent court into a trust fund." See, also, *Blake* v. *Blake*, 30 Hun, 469; *In re Mason*, 98 N. Y. 527. Our attention is called to *Cook* v. *Lowry*, 95 N. Y. 114, upon the question of commissions. In that case the special term had exercised its discretion, and denied commissions, and based its decision upon a finding that there had been a gross neglect or unfaithfulness on the part of the trustee. In sustaining the action of the special term, ANDREWS, J., says: "The trust in that case was never executed. The trustee, in substance, converted the securities to his own use." We think the case is distinguishable from the one now before us.

6. In the sixteenth finding of facts the surrogate states the dividend received upon the shares of the bank-stock of the Second National Bank from 1867 to and inclusive of May, 1889. In such finding there is an omission of the sum of $80, which was received on the 1st day of November, 1889. Cope, one of the trustees, testifies that he received the $80 on the 1st day of November, 1889. As we understand the accounts, that $80 has not been charged to the trustees. The error probably crept into the account by reason of the fact that the sum was received pending the proceedings. We can perceive no reason why the trustees should not be charged with the sum of $80, and the interest thereon from the 1st day of November, 1889. A large amount of evidence was taken before the surrogate in respect to the manner in which the trustees had discharged their duties, and some confusion doubtless arose by reason of the circumstance that no inventory was filed of the estate until many years after the probate of the will. The surrogate, upon all the evidence before him, was called upon to exercise his judgment and discretion in respect to the sundry items involved in the accounting, and he was authorized to apply the rule that trustees are not chargeable with more than they receive of trust-estate, unless there is some evidence of negligence amounting to a willful default. *Shuttleworth* v. *Winter*, 55 N. Y. 624; *Osgood* v. *Franklin*, 2 Johns. Ch. 1. However, we are of the opinion that a further hearing should be had before the surrogate's court, and that in the further statement of the accounts the surrogate's court should (1) allow the commissions on the income, and direct them to be payable by and out of the income only; (2) the surrogate should further investigate and pass upon the question made as to the $40 claimed to have been paid out December 13, 1889, which does not appear to be credited to the trustees; (3) the claim of $448, amount of John E. Washbon notes, should be chargeable only to the income. That seems to be the disposition of July 26, 1889, which seems to be operative upon the parties. The evidence seems to be meager as to the claim of $30, paid November 23, 1887, for which the trustees produced a receipt, which does not clearly indicate why or how they were justified in making the disbursement. The income account should be adjusted to the date of the death of the life-tenant, who died March 9, 1890. The interest subsequent to that time should be allowed and accounted for to the remainder-men. The decree in respect thereto seems to be incomplete and defective. The surrogate having found that the remainder-men received $2,900 under an agreement to allow or pay interest thereon, it

is not apparent why he did not, in adjusting the accounts, take the interest into consideration. Costs of the proceedings before the surrogate should be equally apportioned between the income and the principal, as indicated by the surrogate when the costs were adjusted. The decree does not seem to have been so formulated. We think the decree should be reversed, and the proceedings remitted to the surrogate's court. Decree of the surrogate's court of Otsego county reversed, without costs of this appeal to either party, and proceedings remitted to the surrogate's court. All concur.