■ In the Matter of the Estate of EDWARD G. ACKER, Deceased. FREDERICK J. ZIEMS et al., Appellants; IRVING TRUST COMPANY et al., Respondents.—In a proceeding for a judicial settlement of the account of the petitioners as testamentary trustees under the will of Edward G. Acker, the petitioners appeal from so much of a decree of the Surrogate's Court, Suffolk County (Signorelli, S.), dated April 28, 1986, as directed them to pay the successor trustee $94,424.24, and which directed the entry of a clerk's judgment against them, jointly and severally, and with the further direction that no commissions, costs or disbursements be paid to them.

Ordered that the decree is modified, on the law, by reducing the amount which the petitioners are directed to pay the successor trustee Irving Trust Company by the sum which was attributable to interest charged on the certificate of deposit accounts belonging to the trust which were improperly retained by the petitioners. As so modified, the decree is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Surrogate's Court, Suffolk County, for recomputation of the interest chargeable to the petitioners, and for the entry of an amended decree, in accordance herewith.

In a proceeding to judicially settle an account, the Surrogate's Court has broad discretion to "make such order or decree as justice shall require" (SCPA 2211 [1]). Pursuant to this power, the Surrogate's Court may properly impose interest on surcharges made against a petitioning trustee when the interest is warranted to fully compensate the trust beneficiaries for any losses which they may have suffered or gains which they may not have fully realized due to the trustee's negligence *(see, Cook v Lowry,* 95 NY 103, 113; *Matter of Schuster,* 257 App Div 55, *affd* 284 NY 569; *Matter of Kettle,* 79 AD2d 860; *Matter of Tannenbaum,* 30 Misc 2d 743, 754, *mod on other grounds* 20 AD2d 808, *affd* 15 NY2d 829; *In re Drake's Will,* 132 NYS2d 259, 262). However, there is no authority for the Surrogate's Court to impose interest for the purpose of punishing an accounting trustee for his past mis-

conduct or negligence. Where the trustees, as in this case, improperly retain trust assets after they have resigned their trusteeship and successors have been appointed, interest is not needed to compensate the beneficiaries as to those assets which were retained in interest-bearing accounts when those assets are eventually turned over to the successors, unless there is an indication that the successors could have invested these assets more profitably. Thus, insofar as the Surrogate's decree awarded interest against the appellants on the improperly retained certificates of deposit, the decree should be modified, and we remit this matter to the Surrogate for recomputation of the amount which the appellants are required to pay so as to exclude interest on the improperly retained certificates of deposit.

The $8,143.07 gap between the amount of surcharges stated in the Surrogate's decision ($54,680.39) and the amount stated in the decree ($62,823.46), is explained by the discrepancy between the amounts received by the trustees and the funds on hand which still existed. In addition to the $54,680.39 of improper expenditures for which the petitioners were surcharged in the decision, there was an additional unexplained gap of $8,143.07 between amounts which had been received by the trustees and the amount actually turned over to the successors. Thus, the Surrogate properly surcharged the appellants for this additional amount.

The surcharges imposed by the Surrogate for improper expenditures for accounting and legal services were also appropriate. While the trustees could properly have engaged Touche, Ross & Co. to perform specialized accounting services which were not within the ability of the trustees, the routine preparation of fiduciary income tax returns and allocation of income among the residual trusts did not require such specialized knowledge. These tasks could have and should have been performed by the appellant Ziems, who represented himself as an estates' expert, with a background in gift and estate taxation, who had previously worked for the Internal Revenue Service, auditing tax returns. Accordingly, the Surrogate properly surcharged the appellants for the $21,300 paid to Touche, Ross & Co. for these services (see, Matter of Badenhausen, 38 Misc 2d 698, 700; In re Ducas' Estate, 109 NYS2d 17, 27, affd 279 App Div 730).

Similarly, the appellants were properly surcharged for the $5,000 in legal fees paid to the appellant Ziems. They failed to sustain their burden of proving that this fee was justified by time spent or services performed by Ziems for the trust

beyond what he had already been compensated for by the $137,500 payment for legal services made to him pursuant to the settlement of a separate accounting *(see, Matter of Schaich,* 55 AD2d 914, *lv denied* 42 NY2d 802).

The appellants also failed to establish a claim to a credit of $589.51 on the ground that this amount had been mistakenly entered as an income receipt in a previous accounting as a result of a bookkeeping error. The appellants did not produce *any* evidence to substantiate this claim.

Finally, the Surrogate did not abuse his discretion in denying the appellants any commission in this case since the evidence of their gross negligence and "bad faith" in the stewardship over the trusts was abundant *(see, Cook v Lowry,* 95 NY 103, 114, *supra; In re Ducas' Estate, supra; In re Manville's Will,* 111 NYS2d 267, 268-269; *cf., Matter of Kramer,* 78 Misc 2d 662, 666). Bruce Acker, in fact, waived his right to any commissions. As to Frederick Ziems, we believe the Surrogate accurately described his stewardship over the deceased's estate, and the trusts it created, as follows: "The performance of Mr. Ziems who took it upon himself to solely manage the affairs of this estate was disgraceful at best. His failure to keep accurate accounts of his stewardship, the making of excess and unwarranted expenditure of funds is inexcusable, his delay in winding up this estate, and his failure to timely turnover trust assets to the successor trustee were all acts detrimental to the best interests of this estate". Lawrence, J. P., Eiber, Kunzeman and Sullivan, JJ., concur.