(86 App. Div. 303.)

REEVES v. SNOOK et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. WILLS—ACCUMULATION—INCOME—SURPLUS INCOME—DISPOSITION.

Testator directed that the residue of his estate be divided into ten equal parts, one each to be given to certain legatees. In other paragraphs of the will testator directed that the shares of such legatees should be invested in separate deposits in savings banks at interest, from which the legatees should draw $40 per month on their respective funds, if there were sufficient funds deposited to do so, and that if, on the decease of such legatees, their shares should not be exhausted, they should be equally divided between all of the children then living of testator's deceased grandson, etc. *Held*, that while, if the income of one of the shares amounted to more than $40 per month, the accumulation of surplus above that sum would be unlawful, such surplus would pass to the persons presumptively entitled to the next eventual estate, as required by Real Property Law, Laws 1896, p. 568, c. 547, § 53, and would not pass to testator's next of kin.

Appeal from Special Term, Kings County.

Action by Harriet Doremus Reeves against John Augustus Snook and others for the construction of a will. From a judgment construing the will the executors and certain infant defendants appeal. Reversed.

This is an action for the construction of the will of John B. Snook, deceased, brought by one of the children of the testator, named in the sixteenth article of the will as Harriet Doremus (now Harriet Doremus Reeves). The controversy relates solely to said sixteenth article, which is as follows:

"I give, devise, and bequeath all the residue of my real and personal estate, owned by me or that may hereafter come into my possession, to my executrix and my executors, with full power to dispose of the same. The proceeds thereof are to be paid to my children, my two granddaughters (children of my deceased daughter Emily Cordelia Werry), and to my adopted daughter, Angeline Julia (wife of the Rev. Charles N. Gleason), to be divided into ten (10) equal shares, and paid to them in the following manner: One share to each of my eight (8) children, May Eliza (wife of John M. Hyde), John Augustus, Maria Jane (widow of Edward Werry), James Henry, Harriet Doremus, Samuel Booth, Sarah Antoinette (wife of John W. Boylston), and Thomas Edward; one share to be equally divided between my two grandchildren, Maria Antoinette Werry and Emily Gertrude (wife of Joseph W. Graham), both daughters of my deceased daughter Emily Cordelia Werry; and one share to my adopted daughter, Angeline Julia Gleason. I direct that all the debts that may be due me by my children, including interest and compound interest, shall be deducted from their respective shares, and the debts due me from John M. Hyde, John W. Boylston, and Charles N. Gleason, including interest and compound interest, shall be deducted from the respective shares of their wives. I also direct that my daughter Mary

Eliza shall be paid two thousand (2,000) dollars, my daughter Harriet Doremus fifteen hundred (1,500) dollars, and my adopted daughter, Angeline Julia, fifteen hundred (1,500) dollars, as soon as practicable after my decease, which amount shall be deducted from their respective shares. I also direct that the moneys that I have paid for Harry Whittingham Reeves (the son of my daughter Harriet Doremus), including the debt that he now owes me, or may owe me for board since he was twenty-one (21) years old, at the rate of four (4) dollars per week, including interest and compound interest, also all legal debts owing by him, or any debts that may be incurred by him or for him, with interest and compound interest, to the date of my decease, shall be paid and deducted from his mother's share of my estate. The shares of my two daughters, Mary Eliza and Harriet Doremus, and of my adopted daughter, Angeline Julia, after making the deductions aforesaid, shall be placed by my executrix and my executors in separate deposits for each of them, in such savings banks or other institutions as they, my executrix and my executors, may approve of, that pay interest on such deposits, making arrangements with such banks or institutions by which Mary Eliza, Harriet Doremus (or her son Harry Whittingham Reeves), and Angeline Julia (or her daughter, Mabel Winifred) can draw on such deposits as hereafter mentioned. Said Mary Eliza, Harriet Doremus, and Angeline Julia are each to draw forty (40) dollars per month, and no more, on their respective shares of funds so deposited, commencing on or about the first of the third month after my decease, if there is sufficient funds deposited to do so. If, in the case of Mary Eliza, her share should not be exhausted at her decease, the amount so unexhausted shall be equally divided between all the children then living of my deceased grandson, John B. Snook, Jr. If, in the case of Harriet Doremus, her share should not be exhausted at her decease, her son, if living, may draw on said unexhausted funds the sum of twenty (20) dollars per month, and no more shall be drawn on said unexhausted sum until his decease. If said share of funds are then unexhausted, they shall be equally divided between all the children then living of my deceased grandson, John B. Snook, Jr. If, in the case of my adopted daughter, Angeline Julia, her share should not be exhausted at her decease, her daughter Mabel, if living, may draw on said unexhausted funds the sum of twenty (20) dollars per month, and no more, until her decease. If said share of funds are then unexhausted, they shall be equally divided between all the children then living of my deceased grandson, John B. Snook, Jr. Should Mary Eliza, Harriet Doremus (or her son Harry), or Angeline Julia (or her daughter Mabel) die before the respective shares are exhausted, the funeral expenses of each shall be paid from the respective shares, not to exceed one hundred and seventy-five (175) dollars for each funeral. The shares of my estate for each, Mary Eliza, Harriet Doremus, and Angeline Julia, are to be deposited as aforesaid in trust, so they and children as named can draw monthly the sums named, and no more, at the times named, and are to be paid to the children of my deceased grandson, John B. Snook, Jr., as follows: That for Mary Eliza's share, at her decease and funeral expenses paid; that for Harriet Doremus, when she and her son are deceased and funeral expenses paid for both; that for Angeline Julia, when she and her daughter are both deceased and funeral expenses for both paid."

The court at Special Term held that the scheme by which the testator cuts down the absolute bequest of the shares bequeathed to the testator's two daughters, Mary Eliza and Harriet Doremus, and the share of his adopted daughter, Angeline Julia, involved an unlawful accumulation of the income of each share, so far as that income exceeded $40 a month during the first life and $20 a month during the second. The trial judge expressed the opinion that this surplus income would go to the next of kin of the testator if the scheme were allowed to stand in part; but he deemed it contrary to the intention of the testator to uphold any portion thereof, and therefore held that the whole scheme cutting down the absolute bequests must fail. From the judgment to this effect, and directing the payment to the plaintiff of her one-tenth part or share under the will, the executors and certain infant defendants have appealed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCH-BERG, and HOOKER, JJ.

William H. Harris, for appellant executors.

Harold D. Watson and Charles Martin Camp, for infant appellants.

J. Harry Snook, for respondent.

WILLARD BARTLETT, J. Inasmuch as the testator's daughters, Mary Eliza and Harriet Doremus, and his adopted daughter, Angeline Julia, are to receive only $40 a month out of the shares allotted to them under the will, it is undoubtedly true that, if the income of a share amounted to more than $40 a month, the accumulation of surplus over and above that sum would be unlawful. In that event, however, such surplus would go, not to the next of kin, as stated in the Special Term opinion, on the authority of Hull v. Hull, 24 N. Y. 647, but "to the persons presumptively entitled to the next eventual estate." Real Property Law, Laws 1896, p. 568, c. 547, § 53. The case of Hull v. Hull, supra, so far as that decision applies to the question under consideration, is overruled by Cook v. Lowry, 95 N. Y. 103.

We are not able to concur in the conclusion reached by the learned judge in the court below to the effect that the whole scheme of the will with reference to those two daughters and the adopted daughter, so far as it cuts down the absolute bequest to each of them, must be permitted to fail. The doctrine of Benson v. Corbin, 148 N. Y. 351, 40 N. E. 11, that an absolute devise will not be cut down or lessened by subsequent words which are of an ambiguous or doubtful meaning, does not apply to a case in which the limiting provision is clear and definite. Kurtz v. Wiechmann, 75 App. Div. 26, 77 N. Y. Supp. 964. In the case at bar the learned trial judge thought that:

"If the cutting-down provisions of this will be reduced to that which is legal, it is at least doubtful that the testator had any such intention as such reduced provisions express."

It seems to us tolerably clear, however, that no violence will be done to the intention of the testator if the provisions of the will limiting the income to be received by the two daughters and the adopted daughter to $40 a month shall be upheld to that extent, allowing the surplus income, if there is any accumulation, to go to the persons presumptively entitled to the next eventual estate. The language of the sixteenth article in reference to these shares shows clearly that the testator did not contemplate the possibility that the income from any one of these shares would exceed the monthly payment for which he provided, because in each case he directs what shall be done with the share in case it should not be exhausted at the decease of the first beneficiary. He therefore plainly had in mind the probability that the principal of each share would have to be drawn upon in order to yield $40 a month to the beneficiary.

We see no difficulty in regarding the bequest of each of these shares as in effect a bequest to pay an annuity to each of the beneficiaries, which is not invalidated by the fact that the payment of the annuity may not absorb the whole income. Cochrane v. Schell, 140

N. Y. 516, 35 N. E. 971. There is nothing in the case to suggest that the apparent purpose of the testator is a mere cover for an unlawful accumulation; and that purpose, it seems to us, can only be carried out by permitting the monthly payments to be made, and decreeing a distribution of the surplus income, if there shall be any, to the persons presumptively entitled to the next eventual estate.

The judgment should be reversed, and the appellants should have judgment construing the will in accordance with the views expressed in this opinion.

Judgment reversed, with costs, and judgment directed for the appellants, in accordance with the opinion of BARTLETT, J. All concur.