In the matter of the judicial settlement of the estate of Marianne Kempf, deceased. Decree rendered.

Henry Fuehrer, for petitioner.

Leopold Blumberg, for general guardian.

CHURCH, S. There is no present necessity for the determination of the time at which the various estates vest under the will in question, and I shall not now consider them. The moneys paid to the executrix for the support and maintenance of the infants appeared to have been all expended. The fact that in certain of her duties she has paid the moneys to the estate does not justify her in demanding they should be repaid to her.

The arrangement that the executor, in carrying on the business, should be paid a commission based upon the amount of the business, is, perhaps, a somewhat unusual one; but there is nothing showing its impropriety. The executor has evidently managed this business with rare skill, as the net value of the estate has more than doubled in his hands. He states positively that the amount which he has been paid is precisely the sum he was receiving from the deceased during her lifetime when he was managing the business. The executrix herein presumably had fair access to the books and an opportunity to disprove this statement, if it was untrue. As she has not done so, it seems proper to assume that, when the deceased permitted the executor to continue the business, she meant that he should receive the same compensation for its conduct as executor as he had received from her as an employé.

The commissions to the executor and the executrix will be fixed in accordance with the decision of the Court of Appeals in Beard v. Beard, 140 N. Y. 260, 35 N. E. 488. Account confirmed.

Decreed accordingly.

---

(53 Misc. Rep. 201.)

### In re HARTEAU'S WILL.

(Surrogate's Court, Kings County. February, 1907.)

1. WILLS—TRUSTS—INCOME—PRINCIPAL.

Testator by his will created a trust to apply the rents and profits of his estate to the use of certain beneficiaries. A part of the estate consisted of shares in a corporation which declared a dividend of its profits accumulated before the death of the testator and paid the same in new shares of stock. *Held*, that the stock was income and went to the beneficiaries.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 1618.]

2. PERPETUITIES—WHAT CONSTITUTE.

Testator held a mortgage on the property of his wife, and provided that no interest should be collected on it during her lifetime. *Held* not an unlawful accumulation of interest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perpetuities, §§ 67–73.]

In the matter of the judicial settlement of the trustee under the last will and testament of Henry Harteau, deceased. Decree rendered.

John R. Kuhn, for petitioner.
George V. Brower, for trustees.
William B. Ellison, Corp. Counsel, for city of New York.
Howard O. Wood, for Brooklyn Children's Aid Society.
Greevey & Rogers, for Brooklyn Home for Aged Men.

CHURCH, S. By the will of the deceased a trust is created of his entire estate, the income from which is to be paid as therein directed, and upon the termination of the trust the money is to be used for the erection of a statute to Gen. Lafayette. Among the property left by the deceased were 160 shares of stock of an insurance corporation. The trustees account for 320 shares of stock, and the life tenant contends that 160 shares of this stock should be regarded as income of the estate and not as principal.

The means by which this stock was doubled are briefly as follows: The corporation had in its treasury a surplus of about $200,000 in cash. For the purpose of embarking in new lines of business, for which it became necessary to increase the amount of the capital stock, a meeting was held, and it was resolved to double the same. Inasmuch as under the statute this stock could only be issued for value, however, it was also resolved that there should be paid to all the stockholders of record a dividend of 100 per cent. in cash out of the surplus and undivided profits; and the various stockholders thereupon with such money, which was, of course, the exact amount of the new stock issue, purchased the new stock.

This question is not a new one, but has been before the courts on many occasions. The leading case on the subject is that of Sproule v. Bouch, L. R. 29 Ch. Div. 635, 653, in which this rule is laid down:

"When a testator or settlor directs or permits the subject of his disposition to remain as shares or stock in a company which has the power either of distributing its profits as dividend or of converting them into capital, and the company validly exercises this power, such exercise of its power is binding on all persons interested under him, the testator or settlor, in the shares; and consequently what is paid by the company as dividend goes to the tenant for life, and what is paid by the company to the shareholders as capital, or appropriated as an increase of the capital stock in the concern, inures to the benefit of all who are interested in the capital. In a word, what the company says is income shall be income, and what it says is capital shall be capital."

This decision was followed in this state in Matter of Kernochan, 104 N. Y. 618, 11 N. E. 149, and Matter of Rogers, 161 N. Y. 108, 55 N. E. 393. A recent case is Robertson v. De Brulatour, 111 App. Div. 882, 889, 98 N. Y. Supp. 15, 19, in which the court sums up the rule thus:

"I think it is now established that when the profits or surplus of a corporation which it has earned or realized in the management of its business are paid to its stockholders by way of dividends, whether such profits or surplus has been earned before or after the creation of the trust, so long as the amount that is actually distributed is actual surplus earned, or income or profits made by the corporation in its business and distributed as such, it is income or profits, which go to the life tenant."

This case disposes of the claim of the trustee that, as the amount of this undivided surplus had been earned previous to the death of the

testator, it was to be regarded as capital when paid to the stockholders. Therefore 160 shares of the insurance stock in question has been improperly treated as capital of the estate, instead of being handled as income.

A question also arises here whether under the will there exists an unlawful accumulation, and, if so, what its effect is upon the rights of the respective life tenants. By the provisions of the will the widow is given a life estate in the realty left by the deceased. At his death he held a mortgage on land owned by his wife, and he directed that no interest should be collected on the mortgage during her lifetime. It is claimed that this constitutes an unlawful accumulation of interest. I am unable to agree with this contention, as it seems to me that the effect is precisely the same as if this mortgage were given to a stranger, to hold in trust and to pay the interest thereon to the widow. From the residuum of the estate the trustees are directed to pay a certain amount to the widow during her life, and also a certain amount to the niece and to the contestant herein. It appears that the sum to be so paid is considerably less than the net income of the estate; and the contestant, therefore, argues that there is an unlawful accumulation.

Where the provisions of a will are lawful and complete in themselves, and the accumulation arises in consequence of the fact that the income is larger than the sum directed to be paid by the testator, which fact may be occasioned either by the mistake of the testator or by the enhanced income derived from the capital, such direction will not be declared invalid, but the courts will simply order that the accumulations be paid over to the persons entitled thereto. Tweddell v. New York Life Ins. Co., 82 Hun, 602, 31 N. Y. Supp. 764. The most recent case on this subject is Reeves v. Sncok, 86 App. Div. 303; 83 N. Y. Supp. 746. This decision not only upholds the foregoing rule, but declares that the accumulated income shall go "to the persons presumptively entitled to the next eventual estate." To the same effect is Cook v. Lowry, 95 N. Y. 103. In the case at bar, under the peculiar language of the will, there is no person of whom it can be said that he is entitled to the next eventual estate; and it follows, therefore, that the accumulated surplus should be regarded as a fund as to which the decedent died intestate.

Let findings and decree be submitted in accordance with this opinion. Decreed accordingly.