## In re CLEMENT, State Excise Com'r.

(Supreme Court, Appellate Division, Second Department.   April 24, 1908.)

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

---

## In re CLEMENT, State Excise Com'r.

(Supreme Court, Appellate Division, Second Department.   April 24, 1908.)

Appeal from Special Term.

In the matter of the petition of Maynard N. Clement, as State Commissioner of Excise, for an order revoking and canceling liquor tax certificate No. 24,304, issued to John Lawson.   From an order revoking the certificate, the certificate holder appeals.   Affirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

PER CURIAM.   Order affirmed, with $10 costs and disbursements, on the opinion in the Matter of Clement, as State Commissioner of Excise (decided herewith) 110 N. Y. Supp. 57.

---

(125 App. Div. 710.)

## In re HARTEAU et al.

(Supreme Court, Appellate Division, Second Department.   April 24, 1908.)

1. TRUSTS—EXECUTION BY TRUSTEE—SURPLUS INCOME — RIGHTS OF NEXT EVENTUAL ESTATE.

1 Rev. St. (1st Ed.) p. 726, pt. 2, c. 1, tit. 2, § 40, provides that when, in consequence of the valid limitation of an expectant estate, there shall be a valid suspense of the power of alienation, or of ownership, during the continuance of which the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate.   1 Rev. St. (1st Ed.) p. 773, pt. 2, c. 4, tit. 4, § 2, makes the provision applicable to future estates in personal property.   A will giving property to trustees provided for certain annual payments to testator's widow and niece, with an equivalent lump sum to the niece upon the widow's death, at which time the remainder, with the exception of a sum set aside for a statue, passed to charitable institutions.   A corporation in which testator owned shares doubled its capital stock, gave its stockholders the option to purchase the increase, and declared a 100 per cent. dividend for the express purpose of enabling them to do so. *Held*, that

the new stock passed to the charitable institutions entitled to the next eventual estate, since it was in excess of the income over the annual payments directed by the will, and its accumulation would be unlawful under the statute.

**2. SAME.**

The fact that the whole estate held in trust does not go to the charitable institutions as remaindermen, but only the residue after the payment of the annuities and the bequest for the statue, does not affect their right to take as owners of the next eventual estate.

**3. WILLS—LEGATEES—SUCCESSOR TO CORPORATE LEGATEE.**

A will left a bequest to the city of Brooklyn for the erection of a statue. Two years after the testator's death Brooklyn became a part of New York City, which succeeded to its corporate rights, capacities, and trusts. *Held,* that the city of New York succeeded the city of Brooklyn as beneficiary of the trust.

**4. SAME—EFFECT OF FAILURE OF PRECEDING ESTATE ON REMAINDERS.**

Where a testator provided that upon the death of his wife $35,000 should be devoted to the erection of a statue, and the remainder be given to charitable institutions, the provision for the remaindermen did not depend on the validity of the bequest for the statue, and if the latter failed the remaindermen would still take.

**5. PERPETUITIES—WILLS—CONSTRUCTION—ACCUMULATION OF INCOME.**

A testator held a mortgage on his wife's house, and directed that she should not be required to pay any interest thereon during her lifetime, and that, if she willed her property to charitable institutions in a certain city, his executors should cancel such mortgage, with arrears of interest, to such institutions, but that, if she did not do so, the mortgage and interest should be collected. *Held,* that it was not an accumulation of income, so as to be void.

**6. TRUSTS—COMPENSATION OF TRUSTEE—COMMISSIONS.**

Where there is a trust imposed on executors in addition to that of administration, they are entitled to trustee's commissions.

Appeal from Surrogate's Court, Kings County.

Final accounting of Margaret N. Harteau and others, trustees of and under the will of Henry Harteau. From a decree of the Surrogate's Court (53 Misc. Rep. 201, 104 N. Y. Supp. 586), settling their accounts, there was an appeal. Reversed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

George V. Brower, for appellants trustees.

William G. Cooke (Howard O. Wood, on the brief), for appellants Brooklyn Children's Aid Society and Gates Avenue Homeopathic Dispensary.

William N. Dykman, for appellant Brooklyn Society for the Prevention of Cruelty to Children.

James D. Bell, for appellant city of New York.

John R. Kuhn, for respondent Harriett E. Berry.

GAYNOR, J. The will of the testator left all of his personal estate, excepting some specific bequests, to his executors, and contained an imperative power to them to sell his real estate at the death of his widow, or sooner upon her consent, and put the proceeds into a common fund with the personalty, and also a direction to put all income into such fund, and provided that they should dispose of the said fund as follows:

1. Pay to the widow for her life $1,200 a year, and also the taxes and repairs on her own residence, and also on the country residence of the deceased left to her for life by the will.

2. Pay to his sister $600 a year for the life of the widow, and if she survive the widow, then a present lump sum which shall be the equivalent of $600 a year for the rest of her life.

3. Pay to his niece $400 a year for her life, and its equivalent in gross in the same way on the death of the widow.

4. On the death of the widow to devote $35,000 to the erection of a statue of General the Marquis de La Fayette in Prospect Park in the city of Brooklyn.

5. To divide the remainder among five charitable institutions which are named, share and share alike.

The will was made in 1895 and the testator died in the same year. The said sister is now dead. The widow and niece are alive, and the latter is the sole heir and next of kin of the testator.

(a) The testator left 160 shares of the par value of $100 each in an insurance company whose capital stock was $100,000. At his death the company had a surplus of earnings of $190,000, which continued to increase until it was more than $250,000 in 1902. The company then increased its capital stock to $200,000. It gave its stockholders the option to purchase the said new shares at par, viz., $100 a share, each the same number of shares as he already held, before offering them to outsiders. For the express purpose of enabling its stockholders to take the same, it declared a dividend of 100 per cent. on its old stock out of such surplus. The executors used such dividend, viz., $16,000, to pay for their allotment of the new stock, viz., 160 shares. Whether this new stock is to treated as income or as principal of the estate was much discussed below and here, for if it be the former, then there is an excess of income over and above the annual payments directed by the will, and as an accumulation of it would be unlawful under the statute, the question is presented as to who is entitled to it. The learned surrogate held that it was income and directed it to be distributed to the widow and the niece, on the ground that there is an intestacy in respect of it. But that result does not follow. It goes to those entitled under the will to the next eventual estate, i. e., the estate after that of the executors as trustees. Section 40 of the article of the Revised Statutes on the creation and division of estates (1 Rev. St. [1st Ed.] p. 726) is as follows:

"When, in consequence of the valid limitation of an expectant estate, there shall be a valid suspense of the power of alienation, or of ownership, during the continuance of which the rents and profits shall be undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

And by another provision (1 Rev. St. [1st Ed.] p. 773, § 2; now section 2, Personal Property Law) this rule is made applicable to future estates in personal property (Kilpatrick v. Johnson, 15 N. Y. 322; Gilman v. Reddington, 24 N. Y. 9; Cook v. Lowry, 95 N. Y. 103; Reeves v. Snook, 86 App. Div. 303, 83 N. Y. Supp. 746). There is here a valid limitation of an expectant estate and a suspense of the absolute owner-

ship. "An estate in expectancy is where the right to the possession is postponed to a future period" (1 Rev. St. [1st Ed.] p. 723, § 8), which is the case in respect of the remainder or residue under this will, by the said analogy in the case of estates in personal property to that of estates in real property (Lalor on Real Estate, p. 64 et seq.; Hawley v. Ross, 7 Paige, 107). The next eventual estate under this will goes to the said charitable institutions upon the death of the widow; and hence such surplus income goes to them presently as it cannot be lawfully accumulated. That all of the estate held in trust does not go in bulk to the charitable institutions, but less deductions made from it by the payment of the said annuities and the sum for the gift of the statue, does not impair the fact that the next eventual estate goes to them. It is not necessary that such eventual estate be of the entire preceding estate in trust in order that the rule of the next eventual estate taking the income which cannot be lawfully accumulated apply. It often happens that the next eventual estate is diminished by payments directed by the will to be made out of the preceding estate. In the foregoing view it makes no difference whether such new shares of stock belong to principal or to income, for the same result follows in either case. But if that were not the case it would be unjust and might be difficult to classify it as income, inasmuch as the effect would be to reduce the principal of the said original 160 shares about one-half in value, for that was the necessary effect of doubling the shares of the company. The testator never meant that his estate should be dealt with in such a way as that. The scheme of the issuing of the new shares might well be found to have been to turn $100,000 of the surplus into capital.

(b) The learned surrogate decided the provision for the statue to La Fayette to be void on the ground, apparently, that there was or is no beneficiary ascertainable from the will to enforce the trust of the executors in that respect. The beneficiary was the city of Brooklyn, and while it has ceased since 1897 (two years after the death of the testator) to be a separate city, it is a borough of the new city of New York, which came into existence January 1st, 1898, and succeeded to its corporate rights, capacities and trusts. The city of Brooklyn had the capacity, like cities generally, to receive the gift (Dillon on Munic. Cor. [4th Ed.] § 566 et seq.), and no reason is given why such capacity did not devolve to its successor.

(c) The learned surrogate also held that the provision in respect of the charitable institutions depended on the validity of the provision for the statue, and the latter failing it failed. No reason was given below or here for this. The most that could be said would be that the amount devoted by the will for the statue should not go into the balance or residue given to the charitable institutions, but to the widow and next of kin, the provision for the statue failing; but even that might not be held to be the case here, after giving full consideration to the whole purpose of the testator as exposed by the will. Carter v. Board of Education, 144 N. Y. 621, 39 N. E. 628; Langley v. Westchester Trust Co., 180 N. Y. 326, 73 N. E. 44.

(d) The testator held a mortgage on his wife's house, and directed in his will that she should not be required to pay any interest thereon

so long as she should live, and that if she left her property by will to charitable institutions in the city of Brooklyn, his executors should cancel such mortgage with all arrears of interest to such institutions, but that if she did not do so the said mortgage and arrears of interest should be collected. The learned surrogate properly held that this was not an accumulation of income and therefore void.

(e) There being a trust imposed on the executors in addition to that of administration, they are entitled to trustees' commissions.

Inasmuch as such radical changes will have to be made in the decree, it should be reversed instead of being modified, with costs to the executors and to the said charitable institutions, payable out of the estate. All concur.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

